# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**FRED LEE PERRY,**

    Plaintiff,
                                                 Case No. 13-CV-1444

    v.

**CLEANING PROS OF WISCONSIN, Inc. et al,**

    Defendants.

## DECISION AND ORDER ON PLAINTIFF'S MOTION
## TO PROCEED IN FORMA PAUPERIS

On December 26, 2013, the plaintiff, Fred Lee Perry ("Perry"), filed a *pro se* complaint against Cleaning Pros of Wisconsin, Inc., Tim White, Sears Home Services, Ronald Gamez, Bruno Cardisa, and Dion Green. (Docket # 1.) This matter comes before the court on plaintiff's petition to proceed *in forma pauperis*. Because I find Perry is indigent for purposes of the federal *in forma pauperis* statute and that his complaint is not frivolous or malicious and that it states a claim, his motion will be granted.

## BACKGROUND

Perry began working for Sears Home Services in Milwaukee, WI in March of 2008. While Perry was still employed there, the business moved to West Bend, WI. It was then sold to Tim White ("White"), and the business moved to West Allis, WI. Perry alleges that he and the other employees were told that there would be no change in their employment status if they elected to remain with the company. He further alleges that he was, at that time, making 20% straight commission and 25% commission for extra services. The employer kept the agreement until February of 2013, at which

time Perry's commission was reduced to 15%. He alleges that when he asked supervisor Tim Greene ("Greene") about the reduction, he was told that management said he made too much. Perry further alleges that he was told that another manager, Bruno Candisa ("Candisa"), wanted to fire him but did not have a reason. Perry further alleges that he questioned his supervisor about why he was not promoted and why the company would "send a young man with no knowledge of the business." He alleges that he was discriminated against because of his age—45-years-old—and the age of the supervisor—32-years-old. Perry alleges that he was also not promoted another available office job.

Greene was transferred back to Virginia, which Perry alleges was because Greene did not fire him. Two new supervisors were then hired, both of whom were in their 50s. When one of the supervisors left, the newly-hired supervisor was a woman Perry believes was approximately 32-years-old. Perry also alleges that an employee, who had trained as a carpet tech, was rehired as an office supervisor after quitting months before. He alleges that he was once again passed up for a promotion.

Perry alleges that another position that was "always available" was the carpet truck mechanic. When it was filled, it had been open for a year-and-a-half. He alleges that he was not promoted to this position, but instead the company hired a Hispanic man who was not skilled at the position. Perry states that he was denied "several times" for this position. He alleges that he had great knowledge of the equipment an was often asked to diagnose the equipment before it was serviced in order for the company to save money. Perry also alleges that he was often never paid for servicing the trucks. In sum, Perry believes that he was discriminated against because of his race, which he alleges is evidenced by the supervisor, who is Hispanic, hiring another Hispanic man to work as the mechanic and telling Perry that a supervisor prefers to hire Hispanic people over African-American people. Perry also points out that he was not promoted despite the company losing money when the cleaning trucks were down.

Perry alleges that in June 2013, a new manager was sent to the West Allis location. He further alleges that the new manager immediately created a hostile work environment by cursing out employees and throwing objects. He further alleges that the manager threatened employees to get them to "break the law" and to sell products that were not available. Perry alleges that once he spoke and refused to cheat customers, he was fired on June 19, 2013.

Perry also alleges that he was involved in a car accident in a company vehicle on August 24, 2012. He states that his supervisor told him that he could not take off work following the accident, and that if he did so, he would risk being fired. Perry alleges that the corporate manager became upset when Perry filed for worker's compensation. He further alleges that he later learned that the company did not have worker's compensation insurance and was told Sears had its own policy. He states that he still suffers from the vehicle accident.

In his request for relief, Perry requests back pay related to the original agreement, punitive damages for malice and reckless indifference and for violation of plaintiff's protective rights, and for additional compensatory damages for future pain and suffering related to the injuries he received in the car accident.

## DISCUSSION

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure indigent litigants meaningful access to the federal courts while simultaneously preventing indigent litigants from filing frivolous, malicious, or repetitive lawsuits. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). To authorize a litigant to proceed *in forma pauperis*, the court must make two determinations.

First, the court must determine whether the litigant is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a). This is done through a review of the litigant's assets as stated on an

affidavit submitted to court. *Id.* The party instituting a civil action in a district court is required to pay a $400 fee to the court's clerk, but if the court determines that the litigant has insufficient assets, the court may authorize the commencement of the action without payment of the fee.

Second, the court must determine that the action is neither frivolous nor malicious, does not fail to state a claim, and does not seek money damages against a defendant immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). An action is frivolous if it is clear that the legal theory or the facts alleged are baseless or irrational. *Neitzke*, 490 U.S. at 324; *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). Dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim are to be reviewed based on the standards set for dismissals under Federal Rule of Civil Procedure Rule 12(b)(6). *Dewalt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000). In evaluating whether a plaintiff's complaint fails to state a claim, a court must take the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Id.* at 612. Under Federal Rule of Civil Procedure 8(a)(2), an action is considered to state a claim if, at a minimum, it includes a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

In support of his indigency claim, Perry states that he is separated and has no dependents. He states that he receives employment income between $900.00 to $1,000.00 a month, but he also reports that he has been unemployed since June 2013. Perry also states that he received $700.00 a month in unemployment income but notes that he would stop receiving it in December 2013. From a review of his monthly expenses and assets, I am satisfied that Perry is unable to pay the filing fee.

I now turn to whether Perry's complaint is "frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

Based on his requested relief, it seems that Perry is bringing a claim under 42 U.S.C. § 1981, a claim for failure to promote under Title VII, an age discrimination claim, and a claim related to his injuries sustained during a car accident in his employer's vehicle. An examination of his complaint also reveals that Perry alleges he was fired for filing a worker's compensation claim.

Section 1981 prohibits racial discrimination that limits a person's right "to make and enforce contracts," including the right to enjoy the "benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S. § 1981(a)-(b). Perry, an African American, alleges that the terms of his "original employment contract agreement" were modified. Particularly, as noted above, he alleges that the commission he received was lowered from 20% (sometimes 25%) to 15% in February of 2013. However, Perry does not connect the change in his commission to racial discrimination. Therefore, he has not stated a claim under Section 1981.

A failure to promote claim under Title VII requires a plaintiff to "show that (1) [he] is a member of a protected class; (2) [he] applied for, and was qualified for an open position; (3) [he] was rejected; and (4) the employer filled the position with a person not in [his] protected class, or the position remained open." *Howard v. Lear Corp. EEDS and Interiors*, 234 F.3d 1002, 1006 (7th Cir. 2000) citing *Mills v. Healthcare Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999)). Perry alleges that he was denied several times for a promotion to carpet truck mechanic though he often did work on the trucks, including minor repairs. He states he was also often asked to diagnose equipment before it was sent for repairs. Perry also alleges that the company hired an "unskilled Hispanic" man to take the job and that he was told that the supervisor only wanted Hispanic workers. He has therefore stated a failure to promote claim under Title VII.

The Age Discrimination in Employment Act of 1967 ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). It is also unlawful for an employer "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2). To bring a claim of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), a "plaintiff must prove that [his] age played a role in defendant's decision making process and was determinative of the outcome." *Kabes v. School Dist. of River Falls*, 387 F.Supp.2d 955, 967 (W.D. Wis. 2005) (citing *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003)). Perry alleges that he was not hired to be a supervisor because of his age (45-years-old). He points out that the supervisor was 32-years-old. Later in his complaint, however, Perry alleges that two new supervisors were hired, both of whom were in their 50s. He further alleges that this was done to combat his complaining about age discrimination. Although he makes conflicting allegations, such as the company hiring two supervisors in their 50s, at this juncture his allegation that he was not hired as supervisor because of his age is sufficient.

Perry also alleges he was retaliated against because he filed a worker's compensation claim following a car accident in a company vehicle. Wis. Stat. § 102.35(2) penalizes an employer who, "without reasonable cause, refuses to rehire an employee injured in the course of employment" or who "because of a claim or attempt to claim compensation from such employer, discriminates, or threatens to discriminate against an employee as to the employee's employment." However, this statute does not create a private right of action; the "remedy" is a forfeiture to be paid for the state. *See Brown v. Pick 'n Save Food Stores*, 138 F.Supp.2d 1133, 1140-41 (E.D. Wis. 2001). That is, there

is no cause of action for wrongful discharge where the employee is fired for filing a worker's compensation claim. *See McCue v. Loomis Fargo & Co.*, No. \*1 (E.D. Wis. Jun. 14, 2006) (explaining that the Wisconsin Supreme Court has not recognized an exception to the employment-at-will doctrine that would allow a plaintiff to sue on these grounds and that it would be inappropriate to "[expand] the law of the state beyond the boundaries established in the jurisprudence in the state."). Therefore, there is no private right of action as to Perry's allegations that he was fired for filing a worker's compensation claim.

Finally, Perry requests that he be compensated for "future pain and suffer[ing] related to allege[d] injuries sustain[ed] on the company [vehicle] and not having proper insurance." Perry has only stated that he was injured and that he "still suffers" from the injuries. It is not clear if Perry is alleging that his employer is responsible for his injuries (he alleges that not being able to take off work following the accident caused his injuries to be more severe), if he is alleging the employer is liable to him because it did not have worker's compensation insurance, both, or neither.

Therefore, Perry has stated two claims: a claim for failure to promote under Title VII and a claim under the ADEA. His motion to proceed *in forma pauperis* is therefore granted.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that plaintiff's motion for leave to proceed *in forma pauperis* (Docket # 2) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 4(c)(3), the U.S. Marshals Service shall serve a copy of the complaint, a waiver of service form and/or the summons, and this order upon the defendants. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a)(1)(A) & (b). The current fee for

waiver-of-service packages is $8 per item. 28 C.F.R. § 0.114(a)(2). Although Congress requires the Court to order service by the United States Marshals Service because *in forma pauperis* plaintiffs are unable to pay the filing fee, it has not made any provision for these fees to be waived either by the Court or by the United States Marshals Service.

Perry is hereby notified that, from now on, he is required to send a copy of every paper or document he files with the court to the opposing parties or to their attorneys. He should also retain a copy of each document for his own files. If he does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has ben sent to the defendants or to their attorneys.

In addition, he should notify the clerk of court of any changes of address. Failure to do so could result in an order or other information not being delivered in a timely manner, thus affecting his legal rights.

Dated at Milwaukee, Wisconsin this 23rd day of January, 2014.

BY THE COURT

s/*Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge